UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| ALLISON M. GARNER,<br><br>Plaintiff,<br><br>v.<br><br>KILOLO KIJAKAZI,[1]<br>Acting Commissioner of Social Security,<br><br>Defendant. | Case No. 3:22-cv-00066-CLB<br><br>**ORDER DENYING MOTION TO REMAND AND GRANTING CROSS-MOTION TO AFFIRM**<br><br>[ECF Nos. 18, 19] |

This case involves the judicial review of an administrative action by the Commissioner of Social Security ("Commissioner") denying Allison M. Garner's ("Garner") application for disability insurance benefits and supplemental security income pursuant to Titles II and XVI of the Social Security Act. Currently pending before the Court is Garner's motion for reversal and remand. (ECF No. 18.) The Commissioner filed a response and cross-motion to affirm the agency's decision, (ECF Nos. 19, 20)[2], and Garner filed a reply, (ECF No. 22). Having reviewed the pleadings, transcripts, and the Administrative Record ("AR"), (ECF No. 15), the Court concludes that the Commissioner's finding that Garner could perform other work that exists in significant numbers in the national economy was supported by substantial evidence. Therefore, the Court denies Garner's motion for remand, (ECF No. 18), and grants the Commissioner's cross-motion to affirm, (ECF No. 19).

///

///

---

[1]   Kilolo Kijakazi is now the Acting Commissioner of Social Security and is automatically substituted as a party pursuant to Fed. R. Civ. P. 25(d).

[2]   ECF Nos. 19 and 20 are identical documents.

## I. STANDARDS OF REVIEW

### A. Judicial Standard of Review

This Court's review of administrative decisions in social security disability benefits cases is governed by 42 U.S.C. § 405(g). *See Akopyan v. Barnhart*, 296 F.3d 852, 854 (9th Cir. 2002). Section 405(g) provides that "[a]ny individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action . . . brought in the district court of the United States for the judicial district in which the plaintiff resides." The court may enter, "upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." *Id.*

The court must affirm an Administrative Law Judge's ("ALJ") determination if it is based on proper legal standards and the findings are supported by substantial evidence in the record. *Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1052 (9th Cir. 2006); *see also* 42 U.S.C. § 405(g) ("findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive"). "Substantial evidence is more than a mere scintilla but less than a preponderance." *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (internal quotation marks and citation omitted). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *see also Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005).

To determine whether substantial evidence exists, the court must look at the administrative record as a whole, weighing both the evidence that supports and undermines the ALJ's decision. *Orteza v. Shalala*, 50 F.3d 748, 749 (9th Cir. 1995) (citation omitted). Under the substantial evidence test, a court must uphold the Commissioner's findings if they are supported by inferences reasonably drawn from the record. *Batson v. Comm'r, Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004).

"However, if evidence is susceptible of more than one rational interpretation, the decision of the ALJ must be upheld." *Orteza,* 50 F.3d at 749 (citation omitted). The ALJ alone is responsible for determining credibility and for resolving ambiguities. *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999).

It is incumbent on the ALJ to make specific findings so that the court does not speculate as to the basis of the findings when determining if substantial evidence supports the Commissioner's decision. The ALJ's findings should be as comprehensive and analytical as feasible and, where appropriate, should include a statement of subordinate factual foundations on which the ultimate factual conclusions are based, so that a reviewing court may know the basis for the decision. *See Gonzalez v. Sullivan*, 914 F.2d 1197, 1200 (9th Cir. 1990).

### B.     Standards Applicable to Disability Evaluation Process

The individual seeking disability benefits bears the initial burden of proving disability. *Roberts v. Shalala*, 66 F.3d 179, 182 (9th Cir. 1995). To meet this burden, the individual must demonstrate the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). More specifically, the individual must provide "specific medical evidence" in support of their claim for disability. *See* 20 C.F.R. § 404.1514. If the individual establishes an inability to perform their prior work, then the burden shifts to the Commissioner to show that the individual can perform other substantial gainful work that exists in the national economy. *Reddick v. Chater*, 157 F.3d 715, 721 (9th Cir. 1998).

The first step requires the ALJ to determine whether the individual is currently engaging in substantial gainful activity ("SGA"). 20 C.F.R. §§ 404.1520(b), 416.920(b). SGA is defined as work activity that is both substantial and gainful; it involves doing significant physical or mental activities, usually for pay or profit. 20 C.F.R. §§ 404.1572(a)-(b), 416.972(a)-(b). If the individual is currently engaging in SGA, then a finding of not disabled is made. If the individual is not engaging in SGA, then the analysis proceeds to

the second step.

The second step addresses whether the individual has a medically determinable impairment that is severe or a combination of impairments that significantly limits the individual from performing basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c). An impairment or combination of impairments is not severe when medical and other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on the individual's ability to work. 20 C.F.R. §§ 404.1521, 416.921; Social Security Rulings ("SSRs") 85-28 and 96-3p. If the individual does not have a severe medically determinable impairment or combination of impairments, then a finding of not disabled is made. If the individual has a severe medically determinable impairment or combination of impairments, then the analysis proceeds to the third step.

The third step requires the ALJ to determine whether the individual's impairment or combination of impairments meets or medically equals the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, 416.926. If the individual's impairment or combination of impairments meets or equals the criteria of a listing and meets the duration requirement (20 C.F.R. §§ 404.1509, 416.909), then a finding of disabled is made. 20 C.F.R. §§ 404.1520(h), 416.920(h). If the individual's impairment or combination of impairments does not meet or equal the criteria of a listing or meet the duration requirement, then the analysis proceeds to the next step.

Prior to considering step four, the ALJ must first determine the individual's residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(e), 416.920(e). The RFC is a function-by-function assessment of the individual's ability to do physical and mental work-related activities on a sustained basis despite limitations from impairments. SSR 96-8p. In making this finding, the ALJ must consider all of the symptoms, including pain, and the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence. 20 C.F.R. §§ 404.1529 and 416.929; SSRs 96-4p, 96-7p. To the extent that objective medical evidence does not substantiate statements about the

intensity, persistence, or functionally-limiting effects of pain or other symptoms, the ALJ must make a finding on the credibility of the individual's statements based on a consideration of the entire case record. The ALJ must also consider opinion evidence in accordance with the requirements of 20 C.F.R. §§ 404.1527 and 416.927 and SSRs 96-2p, 96-5p, 96-6p, and 06-3p.

After making the RFC determination, the ALJ must then turn to step four to determine whether the individual has the RFC to perform their past relevant work. 20 C.F.R. §§ 404.1520(f), 416.920(f). Past relevant work means work performed either as the individual actually performed it or as it is generally performed in the national economy within the last 15 years or 15 years prior to the date that disability must be established. In addition, the work must have lasted long enough for the individual to learn the job and performed at SGA. 20 C.F.R. §§ 404.1560(b), 404.1565, 416.960(b), 416.965. If the individual has the RFC to perform their past work, then a finding of not disabled is made. If the individual is unable to perform any past relevant work or does not have any past relevant work, then the analysis proceeds to the fifth and final step.

The fifth and final step requires the ALJ to determine whether the individual is able to do any other work considering their RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(g), 416.920(g). If the individual is able to do other work, then a finding of not disabled is made. Although the individual generally continues to bear the burden of proving disability at this step, a limited evidentiary burden shifts to the Commissioner. The Commissioner is responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that the individual can do. *Lockwood v. Comm'r, Soc. Sec. Admin.*, 616 F.3d 1068, 1071 (9th Cir. 2010).

## II.     CASE BACKGROUND

### A.     Procedural History

Garner applied for supplemental security income ("SSI") on January 21, 2019, with an alleged disability onset date of July 2, 2009. (AR 13) Garner's application was denied initially on April 17, 2019, and upon reconsideration on December 18, 2019. (AR 13, 93,

99.) Garner subsequently requested an administrative hearing and on December 23, 2021, Garner and her attorney appeared at a telephonic hearing before an ALJ. (AR 32-57.) A vocational expert ("VE") also appeared at the hearing via telephone. (*Id.* at 45-46.) The ALJ issued a written decision on March 3, 2021, finding that Garner was not disabled because she could perform other work that exists in significant numbers in the national economy. (AR 13-25.) Garner appealed, and the Appeals Council denied review. (AR 1-5.) Accordingly, the ALJ's decision became the final decision of the Commissioner. Having exhausted all administrative remedies, Garner filed a complaint for judicial review on February 3, 2022. (*See* ECF No. 1.)

### B.     ALJ's Decision

In the written decision, the ALJ followed the five-step sequential evaluation process set forth in 20 C.F.R. §§ 404.1520 and 416.920. (AR 13-26.) Ultimately, the ALJ disagreed that Garner has been disabled from June 15, 2014, the alleged onset date, through the date of his decision. (AR 25.) The ALJ held, based on Garner's RFC, age, education, and work experience, Garner could perform other work that exists in significant numbers in the national economy. (AR 24-25.)

In making this determination, the ALJ started at step one. Here, the ALJ deferred the determination of whether Garner engaged in substantial gainful activity since January 21, 2019. (AR 15.) At step two, the ALJ found Garner had the following severe impairments: dystonia (neurodegenerative disorder of the central nervous system) and neurodevelopmental disorder. (AR 15-16.) At step three, the ALJ found Garner did not have an impairment or combination of impairments that either met or medically equaled the severity of those impairments listed in 20 C.F.R. Part 404, Subpart P, Appx. 1; 20 C.F.R. 416.920(d), 416.925, and 416.926.(AR 16.)

Next, the ALJ determined Garner has the RFC to perform medium work as defined by 20 C.F.R. §§ 404.1567(c) and 416.967(c) except:

> she is capable of standing/walking 6 hours in an 8-hour workday and sitting 6 hours in an 8-hour workday. She is capable of occasional climbing of stairs/ramps, but never climbing ladders and scaffolds. She is capable of

occasional balancing, stooping, kneeling, and crouching, but never crawling. She is capable of occasional pushing/pulling with the left arm and occasional handling/fingering with the left hand. She must avoid concentrated exposure to unprotected heights and moving mechanical parts. She is able to understand, remember, and carry out simple and routine tasks and instructions (SVP level 2) but not complex ones.

(AR 18.)

The ALJ found Garner's medically determinable impairments could reasonably be expected to cause the symptoms alleged; however, Garner's statements concerning the intensity, persistence, and limiting effects of those symptoms were not entirely consistent with the medical evidence and other evidence in the record. (AR 19.) In reaching this conclusion, the ALJ reviewed and discussed the objective medical evidence, medical opinions, and factors weighing against Garner's credibility. (AR 15-23.) Garner does not have any past relevant work. (AR 23.)

Relying on the testimony of the VE, the ALJ determined that Garner's age, education, work experience, and RFC would allow her to perform other occupations existing in significant numbers in the national economy, such as: rental clerk, counter clerk, and usher. (AR 24.) Accordingly, the ALJ held Garner had not been under a disability since the date the application was filed, January 21, 2019, through the date of the decision, and denied Garner's claim. (AR 25.)

### III. ISSUES

Garner seeks judicial review of the Commissioner's final decision denying SSI under Titles II and XVI of the Social Security Act. (ECF No. 18.) Garner raises two issues for the Court's review:

(1) Whether the ALJ's RFC is not supported by substantial evidence where he failed to incorporate Plaintiff's mild limitations in interacting with others, without explanation; and

(2) Whether the RFC determination is unsupported by substantial evidence because the ALJ failed to develop the record and obtain a functional assessment of Plaintiff's severe physical and mental limitations.

## IV. DISCUSSION

### A. ALJ's RFC Properly Incorporated Garner's Mild Limitations in Interacting with Others

Garner argues the ALJ failed to properly incorporate her mild limitations in interacting with others in the RFC, meaning the RFC is not supported by substantial evidence. (ECF No. 18 at 13.) The Commissioner argues Garner's mild limitation in her ability to interact with others was included in the RFC by limiting Garner to "simple and routine tasks and instructions (SVP level 2) but not complex ones." (ECF No. 19 at 4.)

The Ninth Circuit and other courts within this Circuit have found that a moderate limitation in interacting with others can be accounted for by an RFC limiting a claimant to simple tasks. *See Rogers v. Comm'r of Soc. Sec. Admin*., 490 F. App'x 15, 17-18 (9th Cir. 2012) (unpublished) (finding an RFC that limited the claimant to simple routine tasks involved in unskilled jobs properly accounted for the claimant's moderate difficulties in social functioning); *see also Nyberg v. Comm'r of Soc. Sec.*, No. 2:20-CV-0338-DMC, 2021 WL 1295378, at *5 (E.D. Cal. Apr. 7, 2021) ("Dr. Sunde's moderate limitations in social interactions are adequately encompassed by the ALJ's finding that Plaintiff is limited to simple, repetitive tasks."); *see also Menges v. Berryhill*, No. 1:16–cv–01766–BAM, 2018 WL 1567786, at *8 (E.D. Cal. Mar. 30, 2018) (finding limitation to simple, routine tasks adequately considered claimant's moderate limitations in social functioning); *Messerli v. Berryhill*, No. 1:16–cv–00800–SKO, 2017 WL 3782986, at *11 (E.D. Cal. Aug. 31, 2017) (finding limitation to "simple repetitive tasks" accounted for moderate limitations in claimant's ability to accept instructions from supervisors and interact appropriately with coworkers and the public); *Henry v. Colvin*, No. 1:15–cv–00100–JLT, 2016 WL 164956, at *18 (E.D. Cal. Jan. 14, 2016) (finding restriction to simple tasks encompassed claimant's moderate limitations in dealing with changes, social interaction, and low stress tolerance); *Langford v. Astrue*, No. CIV S–07–0366 EFB, 2008 WL 2073951 at *7 (E.D. Cal. May 14, 2008) ("unskilled work ... accommodated [the] need for 'limited contact with others' ").

In this case, the ALJ found Garner had a mild limitation in her ability to interact with

others. (AR 16.) In Garner's RFC, the ALJ included a limitation "simple and routine tasks and instructions (SVP level 2) but not complex ones." (*Id.* at 18.) Because a limitation to simple and routine tasks properly accounts for moderate limitations in a claimant's ability to socially function, the ALJ properly incorporated Garner's mild social limitations in her RFC. *Rogers* 490 F. App'x at 17-18.

### B. ALJ Was Not Required to Develop the Record Further

Next, Garner argues that the ALJ failed to properly develop the record. (ECF No. 18 at 15-16.) Specifically, Garner argues there are four reasons the record was deficient: (1) Garner argues the record reveals worsening symptomology of her lower left extremity and cervical spine that is contradictory to state agency consultants' opinions that Garner could stand and/or walk for about six hours, sit for six hours per eight-hour work-day, use her left upper and lower extremities on an occasional basis for push/pull; (2) the ALJ found that Garner's osteochondroma excision of the left leg was non-severe due to insufficient medical evidence as to its severity; (3) the ALJ improperly found that the state agency consultants' opinions are consistent with Garner's activities of daily living; and (4) the ALJ did not assess a possible determinable impairment of an intellectual disorder. (ECF No. 18 at 16-23.) The Commissioner argues that the ALJ was not required to further develop the record because the record was complete and the claimant in a Social Security disability claim bears the burden of proving that he or she is disabled. (ECF No. 19 at 10-12.)

In general, the claimant in a Social Security disability claim bears the burden of proving that he or she is blind or disabled by informing the ALJ of "all known evidence to you that relates to whether you are blind or disabled." 20 C.F.R. § 416.912(a); *see also Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1998), as amended (Jan. 26, 1999) ("At all times, the burden is on the claimant to establish her entitlement to disability insurance benefits"). An ALJ has a duty to develop the record further only when "there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." *Ford v. Saul*, 950 F.3d 1141,1156 (9th Cir. 2020) (quoting *Mayes v. Massanari,* 276 F.3d 453, 459-60 (9th Cir. 2001)). Ambiguous evidence, or the ALJ's own finding that the record

is inadequate to allow for proper evaluation of the evidence, triggers the ALJ's duty to "conduct an appropriate inquiry." *Tonapetyan v. Halter*, 242 F.3d 1144,1150 (9th Cir. 2001), citing *Smolen v, Chater*, 80 F.3d 1273, 1288 (9th Cir. 1996).

### 1. The ALJ Was Not Required to Develop the Record Regarding Garner's Dystonia.

Garner argues the ALJ failed to fairly develop the record because he relied on medical opinions in the record concerning Garner's dystonia rendered by state agency consultants while other evidence indicates worsening symptoms. (ECF No. 18 at 17.) The Commissioner argues that the ALJ properly relied on the state agency consultant's medical opinions and properly evaluated the evidence showing worsening symptoms as happening conjunctively with Garner's failure to continue with her Botox treatment. (ECF No. 19 at 12.)

The standard of review for the Court is whether the ALJ's decision is supported by substantial evidence in the record. *Orteza,* 50 F.3d at 749. If the ALJ's finding is supported by substantial evidence, the court "may not engage in second-guessing." *Thomas v. Barnhart*, 278 F.3d, 947,959 (9th Cir. 2002). "An ALJ's duty to develop the record further is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." *Mayes*, 276 F.3d at 459–60 (internal citation omitted). The duty to develop the record is not triggered when the ALJ has years of health records and multiple opinions from medical experts. *Ford*, 950 F.3d at 1156 ("Given that the ALJ had years of Ford's mental health records and multiple opinions from non-examining psychiatrists to inform her decision, this duty [to develop the record] was not triggered.") The length of time between the state agency consultants' reports and the time of the ALJ's decision does not impact the ability of the ALJ to rely on those reports. *See Meadows v. Saul*, 807 F. App'x 643, 647 (9th Cir. 2020) (unpublished) ("There is always some time lapse between a consultant's report and the ALJ hearing and decision, and the Social Security regulations impose no limit on such a gap in time.").

Here, the presence of evidence in the record spanning years from multiple sources

means that the duty to develop the record is not triggered. *Ford*, 950 F.3d at 1156. Therefore, the inquiry turns to whether the ALJ's decision is supported by substantial evidence.

Here, the Court finds that there is substantial evidence in the record to support the ALJ's conclusion that Garner's dystonia was managed by the Botox treatments and therefore the state agency consultant's opinions were consistent with the rest of the evidence in the record. The ALJ considered evidence in the record from many years, including evidence that entered the record after the state agency consultants reviewed the record. (AR 19-22.). The ALJ discussed the benefits from the Botox treatment and how the failure to continue treatment corresponded with the evidence of worsening symptoms. The ALJ noted that Garner reported more than fifty percent improvement in dystonia symptoms following the Botox treatment. (AR 22, citing AR 444.) Failure to seek treatment or follow a prescribed course of treatment is a valid clear and convincing reason for rejecting a claimant's subjective symptom allegations. *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008). Because the evidence in the record showed that Garner reported a positive response to the Botox treatments and the evidence in the record showing a return of symptoms corresponded with Garner's failure to continue the Botox treatments, the ALJ could properly find that Garner's dystonia was not disabling. *See Warre v. Comm'r of Soc. Sec. Admin*, 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be controlled effectively with medication are not disabling for purposes of determined eligibility for SSI benefits.") (internal citations omitted).

### 2. The ALJ Was Not Required to Develop Evidence Regarding Garner's Osteochondroma Excision.

Next, Garner argues the ALJ was required to develop the record when he found that Garner's osteochondroma excision of the left leg was non-severe on the basis that there was insufficient medical evidence demonstrating its severity. (ECF No. 18 at 18.) The Commissioner responds that Garner misinterpreted the ALJ's finding that there was insufficient evidence to show that the osteochondroma excision was a severe impairment

as finding that the record was insufficient to render an opinion. (ECF No. 19 at 15.)

In his decision, the ALJ states that although there is a history of osteochondroma excision left leg in Garner's record, "there is insufficient objective medical evidence demonstrating any other impairments cause, either singly or in combination with the claimant's severe impairments, more than a minimal effect on the claimant's ability to perform basic mental or physical work activities." (AR 15.) The ALJ is required to develop the record where the record is ambiguous or inadequate. *Tonapetyan*, 242 F.3d at 1150. The evidence in the record regarding the osteochondroma excision comes from treatment notes from Garner's orthopedist. (AR 433-35.) The notes show that Garner had an osteochondroma excision of the right leg in 2012 and another excision of a small osteochondroma of the same leg in September of 2020. (*Id.*) The notes indicate Garner assessed her pain as a four out of ten. (AR 434.)  At the hearing in December of 2020, Garner did not present any additional evidence as to the osteochondroma. (AR 33.)

Although the evidence of the osteochondroma is not extensive, it is not ambiguous. Therefore, the ALJ was not required to further develop the record as claimed by Garner. Rather, the ALJ found the evidence in the record was insufficient to show that the osteochondroma caused more than minimal limitations for a continuous period of not less than 12 months. (AR 15), (assessing severity at step two); 42 U.S.C. § 423(d)(1)(A) (defining disability as a medically determinable impairment that, among other requirements, lasts "for a continuous period of not less than 12 months"). The ALJ's conclusion that the record does not support a finding of a severe impairment due to osteochondroma is not the same as finding that the record is insufficient to make such a determination. Because it is rational for the ALJ to find that a condition requiring only one treatment visit in two years since the alleged onset date is not a severe impairment, the Court must uphold the ALJ's decision. *Orteza,* 50 F.3d at 749.

### 3. The ALJ Properly Considered Garner's Daily Activities.

Next, Garner argues that the ALJ improperly considered her daily activities in making the finding that Garner can perform full-time and sustained work. (ECF No. 18 at

21.) The Commissioner argues that the ALJ did not dismiss Garner's testimony regarding her daily activities as uncredible or dismiss her allegations of pain, but rather used her daily activities to show that there is evidence in the record to support the findings of the state agency consultants. (ECF No. 19 at 19.) Specifically, the ALJ determined that "the [State medical consultants'] opinions are substantially consistent with the claimant's activities of daily living including that she does her personal care, prepares meals, shops in stores and via computer, does household chores, and is able to travel about the city via public transportation without anyone accompanying her." (AR 23, citing AR 31-48, 222-29, 250-57.)

Under the substantial evidence test, a court must uphold the Commissioner's findings if they are supported by inferences reasonably drawn from the record. *Batson*, 359 F.3d at 1193. Even if the evidence can be rationally interpreted in more than one way, the ALJ's decision must be upheld. *Orteza,* 50 F.3d at 749. Here, it is rational to interpret Garner's daily activities as supporting the state medical consultants' conclusions that Garner can perform a reduced range of light work. Garner testified that she could walk for thirty minutes without stopping, that she could lift and carry a maximum of ten pounds and could perform her duties as a caregiver using her right hands. (AR 37-39.) The evidence in the record also establishes that Garner can dress and bathe herself, perform household chores, shop, and go on the city bus without assistance. (*See e.g.*, AR 224, 251, 287.) Garner also indicated that she can perform housework and yardwork including laundry, cleaning rooms, making the bed, doing dishes, and weeding. (AR 224.) While Garner's contention that many home activities do not easily transfer to the workplace, it is rational to interpret these activities as consistent with the state medical consultants' conclusions that Garner can perform a reduced range of light work. Some of the activities specifically mentioned in the ALJ's decision, like doing dishes or cleaning rooms, are activities performed during work as a dishwasher or house cleaner. Because the ALJ rationally interpreted the evidence in the record, his opinion must be upheld. *Orteza,* 50 F.3d at 749.

///

### 3. The ALJ Was Not Required to Develop the Record Regarding Possible Intellectual Impairment.

Garner's final argument is that there is evidence in the record to support that she may meet or medically equal mental impairments in listings 20 C.F.R. pt. 404, subpt. P, app. 1 § 12.05B, and therefore the ALJ was required to develop the record regarding potential mental impairments. (ECF No. 18 at 22-23.) Garner points to her Weschler Adult Intelligence Scale score of 70 and attendance of a special education program in high school from 2013 to 2017 as showing evidence of a mental impairment. (*Id.,* citing AR 288, 208.) The Commissioner argues that the ALJ was not required to develop the record regarding a possible intellectual impairment because the record provided sufficient evidence of Garner's intellectual activities. (ECF No. 19 at 24.) The Commissioner points to two psychological consultative examinations that span two years as well as years of neurological treatment notes that addressed mental health issues. (AR 283-89, 376-409, 415-19, 440-61.) The ALJ reviewed the evidence relating to Garner's mental health and discussed the findings of the experts in detail. (AR 17-18.) Additionally, the Commissioner points out that there is no evidence showing that any medical professional found Garner to have a medically determinable impairment of an intellectual disorder.

As discussed above, the duty to develop the record is imposed when the record is ambiguous or inadequate. *Mayes*, 276 F.3d at 459–60. The duty to develop the record is not triggered when the ALJ has years of health records and multiple opinions from medical experts, which is the case here. *Ford*, 950 F.3d at 1156. Because the record was not inadequate, the standard of review for this Court is whether the ALJ's decision is supported by substantial evidence in the record. *Stout*, 454 F.3d at 1052.

Here, the ALJ found that Garner did not have a mental impairment that meets or medically equals the criteria of listing 12.11. (AR 16.) To make this finding, the ALJ relied on the evidence in the record showed that Garner was able to understand, remember and carry out simple and routine tasks and instructions (SVP level 2) but not complex ones. Dr. Wildman, who administered Garner's IQ test and evaluated her in both September

2017 and November 2019 did not find a diagnosis of an intellectual disorder. (AR 289, 419.) Therefore, based on the evidence in the record, it was rational for the ALJ to conclude that Garner did not have a mental impairment that met or medically equaled the listing criteria. Because the ALJ's decision was rational, the Court must uphold his decision. *Orteza,* 50 F.3d at 749.

## V.   CONCLUSION

Having reviewed the Administrative Record as a whole and weighing the evidence that supports and detracts from the Commissioner's conclusion, the Court finds the ALJ's decision was supported by substantial evidence and is free of legal error.

Accordingly, **IT IS THEREFORE ORDERED** that Garner's motion to remand (ECF No. 18) is **DENIED**, and the Commissioner's cross-motion to affirm (ECF No. 19) is **GRANTED**;

**IT IS FURTHER ORDERED** that the Clerk **ENTER JUDGMENT** and **CLOSE THIS CASE**.

**DATED**: December 28, 2022

_____
**UNITED STATES MAGISTRATE JUDGE**